Prime Manur Investment Partners v. Phoenix Office. Would you call the case, please? Case number 10-0928, Prime Mansur Investment Partners, LLC v. Phoenix Office, LLC. For those who are going to argue, just step up briefly and let us know who you are, and then the appellant can remain. Very good. Counselors, I think you both appeared before the appellate court before. You know what the marching orders are. You each have 15 minutes. You may save out from your 15 any portion you wish for a response. I think you can safely say that we're familiar with your briefs and the facts. Your Honor, thank you. May it please the Court. What I would like to do today is to first very briefly describe what I believe are the most pertinent facts that underlie this appeal. And then I would like to explain why we believe that summary judgment was incorrectly granted, even though there was substantial evidence of two things. One, that the defendant terminated the agreement in question early, in advance of the date to which the defendant had extended the closing date. The contract language itself, Counsel, is pretty cut and dried, isn't it, with respect to the termination date, the drop-dead date, as you refer to it in your brief, and I think your opponent does as well. It is. Isn't it pretty clear about changes and amendments have to be in writing as well? Changes and amendments, there are two provisions that address that, Your Honor. The first one is 16.4 of the agreement. That has to do with amendments. The second one is the very next sentence, 16.5, which says that a waiver of a condition in the contract has to be in writing, signed by one of the attorneys for the waiving party. In this case, Ms. Susan Matejak, an attorney at Jones Day, counsel for the defendant, sent a letter on December 21. The one that said we'd like to get this done by the end of the year, if possible? Correct. So you're saying that's the waiver in writing? Correct. Does it say anything about extending the drop-dead date specifically? No, it doesn't. What happened here is this. In May of 2005, the parties entered into a settlement agreement of a different clause. Yes, we're aware of that. We read your brief, counsel. Is there any evidence, excuse me for interrupting you, but here, another question I'd like to raise. Even if you were right about the possibility of a question of facts surrounding December 15, what evidence, if any, do you have that Mr. Ball was ever going to change his mind and grant his consent? Let me jump right to that. I mean, how much, how long would you have to go, what would Ball have to say to make this a question where we're just in an academic exercise? That even if we sent this back now, you still have the problem of getting Mr. Ball's consent. And it would appear from the record that you're going to have a little difficulty doing that. Your Honor, I don't believe that's true. I don't think we do need Mr. Ball's consent. The trial judge felt that way, though, didn't she? Well, unclear. What we would need is an order from the, we don't need, the relief we need does not require Mr. Ball's consent. We could get an order. Are you talking about the refund of the $80,000? No, no. We could get an order saying that the defendant interfered with our ability to satisfy a condition proceeding, that the value of the piece of property that we were going to buy for only $66,000 was valued at $40,000. And that the difference would be the damages and just get an order for that amount of damage. Okay. In the alternative, we could get an order requiring that the defendant pay to us all of the benefits as they came in from owning the property. Okay. So even if you didn't have Ball's consent, you'd have a breach of contract? We could get relief. I think I understand your position. It's not completely clear from your brief what your damages would be. But there is an intimation in your brief that from your perspective, this breach of contract is separate from Mr. Ball's consent. Correct. Okay. Go ahead. Now, Your Honor, ask the question, what's the evidence that Mr. Ball would have consented? And we believe that there is substantial evidence that he would and virtually no evidence that he would not. Now, what's our evidence? In May and September, Mr. Ball told by fact... He didn't need a reason not to consent, did he? Well, that's not true, Your Honor. He was contractually obligated by his own contract with Plum Court to not unreasonably withhold consent. Unreasonably withhold? Correct. Now, in May and September, Mr. Ball had told Mr. Reschke that he would consent. The only open issue was a tax concern. That tax concern was raised by a letter that the defendant's lawyer sent to Mr. Ball telling him all the information he would have to gather. What if Mr. Ball had developed a different analysis on his own, irrespective of the tax issues? I'm familiar with what you're talking about with respect to the tax issues. You argue pretty effectively that those tax issues were red herrings in a sense. They could be easily solved, and they were solved... And you had testimony to that effect, and that's in the record. Correct. Okay, but what if Mr. Ball had developed a different theory for withholding consent? Suppose he just simply said, I don't really think much of the purchasers here in terms of joining them in. Would that be a reasonable withholding of consent that he didn't like you guys? Well, it could be if we were members of the mafia or something like that. But he could have articulated a different reason if he wanted to. If it was a reasonable reason. In fact, Your Honor, we know that that's untrue. What did he say, though, in his decision? Mr. Ball, in his decision, he wrote a letter declining to consent. The only things he specified were the tax considerations, which Justice Cahill has just addressed. Those tax considerations were completely addressed by the letter of opinion from Mr. Lawrence Plus, the tax partner at Barnes & Thornburg, to the effect that none of the tax issues were a concern. Mr. Ball then asked Mr. Reschke if he would indemnify Mr. Ball and the entity Plum Corps in the event that the tax issues turned out to be a problem. Mr. Reschke said yes, he would. He offered that indemnification. Your Honor, may I ask, what were the items that were specified by Mr. Ball? There are only two. The tax issues, and there's substantial evidence that those were of no moment. And the request for an indemnity, and the undisputed evidence is that Mr. Reschke offered to do that. So would Mr. Ball have consented? Your Honor asks, maybe he just doesn't like Mike Reschke. In fact, Mr. Reschke and Mr. Ball had known each other for many years. Well, I'm just saying that if he had come up with another reason in that period, or even to this day, what if he comes up with another reason? You know, we send this back, for example, you still haven't acquired his dissent. All you've gotten is a finding by this Court is that the December 15th date was not a drop-dead date based on our reading of the facts of the case. You would still be required to get his consent. We could get relief without his consent, but I also have no reason to think that if Mr. Ball were sent the Larry Bloss' opinion, Would you get relief if you could litigate the issue of their interference with your contractual rights, I suppose? That's correct. Well, there are cases out there, too, that would probably support your position that unreasonable consent has its, I mean, Correct. I think we pretty much understand your position. You want to sum up? Let me make one other point, Your Honor, if I might. As a matter of law, we've been talking about the facts. Would Mr. Ball have consented? As a matter of law, it's not even our burden to prove that Mr. Ball All you have to do is to show that there was a disputed issue of material fact which precluded summary judgment. No, it goes further than that. As a matter of law in Illinois, if you interfere with the ability of the other side to a contract to satisfy a condition preceded, Then the person who was satisfied But you want summary judgment for your position. No. No? Okay. No, we didn't move for that. You don't want to go that far for it. But the burden of proof You want the chance to litigate the issue of interference. The burden of proof that was placed on us by the trial court is a nonexistent burden. Okay. Once we prove the interference, we no longer have to prove that Mr. Ball would actually have consented. It's their burden to rebut. Certainly, at a minimum, that's an issue of fact as to whether he would have approved or not. Okay. We'll give you an opportunity to respond after we've heard from counsel. Your Honor, thank you. Phoenix. Your name again? Kathryn Bosky-Weiler. It's long and cumbersome. I apologize. No, it's not. It's a very interesting name, I think. You pronounce your middle name? Bosky. Bosky. Correct. Okay. Not Bos-kay. Actually, if it were pronounced correctly, that would be it, Your Honor. Would it? That's how I was going to pronounce it. But I will pronounce it the way you pronounce it. But for now, we'll just refer you to Ms. Weiler. Is that all right? That's fine, Your Honor. We'll blame my grandparents for the rest. Okay. Good morning, Your Honors. May it please the Court, my name is Kathryn Bosky-Weiler. I represent Defendant Appley, Phoenix Office, in this case. Justice Cahill, you noted at the beginning of counsel's argument that the language in this contract is fairly cut and dried. And that's exactly Phoenix Office's point in this case. What's the difference between an accommodation and a waiver? In this case, if you look at the language of the contract, if you'll forgive me, Your Honor, I'll answer your question as soon as we look at the language of the contract, because I think that's what addresses it. The language of the contract states that the closing should occur by December 15th, and after that point, either party may, at its sole discretion, at its sole and absolute discretion, terminate this agreement in its entirety. It's not a drop-dead date in that the contract doesn't terminate on December 15th. On December 15th, if there's no closing, what the parties have specifically contracted for is the vested right to terminate the contract at that point, either side. Either party has the ability to do it at that point. What if the party, after the December 15th date, makes some substantial change or expenditure, like legal fees, because you've given them the impression that you're going to keep this issue open until at least the end of the year? The impression, Your Honor, was, and this goes back to your question of accommodation versus waiver. Accommodation, yeah. Accommodation is, okay, it's December 15th. We haven't gotten a decision yet from Mr. Ball. Mr. Ball is the individual who has to give his consent. If Mr. Ball gives his consent, we move ahead, we close, we're finished. But if Mr. Ball doesn't give his consent, then the deal is at an end, and that is where the accommodation ends. And you say that in your brief. You say, said another way, you're rephrasing what you had just said earlier, Phoenix Office's decision not to terminate the contract on December 15th. Now, is that an admission that you didn't terminate it on the 15th? Correct, Your Honor. Because the contract didn't terminate on the 15th. Okay. It was simply an accommodation to give Mr. Ball additional time to evaluate the proposed transfer. Did Prime have the right to rely on that accommodation? Prime had the right to terminate. Rely on that accommodation. To what extent? Here is the problem, Your Honor, in saying it's an accommodation to the end of the year. It's your word. I'm just asking you why it can't be considered a waiver of the December 15th drop-dead date. I think you've already admitted that it was, but that doesn't preclude the possibility that you could still have a new drop-dead date at any time after the 15th. Here's why, Judge, because 12-15 is the closing date specified in the documents. It's not the date when the contract expires. What the parties stated and what the language of the contract states is that as of December 15th, if there hasn't been a closing, either party can terminate at any point after that. At that point, even if the other party has made substantial steps in reliance on your accommodation. Well, in that case, Your Honor, what steps? It's not clear what steps we're talking about. Is that a question of fact or a question of law? It's not. Whether or not there was an accommodation that would have provided them with an opportunity to do certain things, like expend legal fees, for example, substantial legal fees to continue working on this thing. Well, first of all, Judge, from the record it appears that any substantial legal fees that were expended were actually expended. Well, is that a question of law or a question of fact, again, as to whether or not they spent any money on this after the 15th? It's never been an issue and it doesn't need to be an issue because the legal... Did you ask them about that? Of course, counsel will disagree, but the reason, Your Honor, it would be... I think that's why they're here. Because at that point, either side is vested with the right to terminate the contract. Either side. An accommodation is simply, we're waiting for a response from Mr. Ball. It's not, we're waiting until Mr. Ball agrees to the terms of the transfer. You argue that under the contract, your accommodation, quote, unquote, in no way was something that they could, quote, rely on for the expenditure of additional time and money and effort in order to bring this thing to a close that's satisfactory to them. It would, well, that's, it's not something that would give them leave to assume that Phoenix office is going to keep the terms of this contract open until prime answer gets a decision that prime answer wants to get. Okay. But, in addition... I understand. I think that's the point you're making. Correct. And in addition to that, Judge, what the parties were waiting for on December 15th, when Phoenix office said, we want to wrap this up by the end of the year, we want to get this done, they were waiting for Mr. Ball's consent. When Mr. Ball comes back and says, I'm not consenting to the transfer. That should be the end of it. That's the, well, that's not the end of it if the parties decide that they're going to continue negotiating. But the language of the contract states they don't have to. If they decide, either party decides, okay, Mr. Ball's come back. Mr. Ball has said he's not going to consent. But the contract also permits an extension of that December 15th date if it's agreed to in writing, doesn't it? The contract actually doesn't specify. That certainly would be plausible, Your Honor. Correct. It's agreeable if it's included in writing. The reason I'm hesitating, Judge, is only because the December 15th date is generally specified in the contract, as I understand it, as the final date that's specified. But you're correct. If the party's elected to extend that date, they could. All right. So my question, then, is why isn't the letter from your counsel sufficient to raise the question of material fact that the parties have, in fact, agreed to extend the date in order to obtain the consent of Mr. Ball? Because the language of the contract talking about the December 15th date does not create an end date for the contract. The contract does not, on its face, terminate on December 15th. Okay. No, that's fine. But are you saying, then, or are you admitting? I probably shouldn't use the word admit with a lawyer because you'll never admit anything without reservations and your fingers crossed behind your back that they had the right to rely on that letter so that they could continue to negotiate and try to get Mr. Ball to consent. I'm saying that the parties all understood that the contract had not yet been terminated. Okay. And they were waiting for Mr. Ball's decision. Okay. Now, did they have the right, then, in that interim period between December 15th and the time that Ball finally said whenever it was, I think? The 21st. The 21st Ball said, I'm not going to give my consent. Did they have the right to go ahead and make an effort to do their best to bring about a satisfactory resolution? Prime answer, absolutely. And did they have the right to expect that you would not interfere with that right in any way? Certainly. Okay. And is it a question of fact as to whether or not you really frustrated their right? It's not when you look at Mr. Ball's deposition. Mr. Ball testified specifically. Aha, here we go again. We're back to a deposition. We have to rely on the testimony of Mr. Ball at the deposition, right? Why did he say he wasn't consenting? He stated that when he reviewed everything he had in front of him, and it's important to note, that did not include any correspondence from Jones Day. Mr. Ball stated, when I thought about the documents that I had, I reviewed everything. I can actually read to you the exact point in the deposition that says this. Well, who brought up all the tax possible consequences that he started looking at? Who suggested that this be something that he concerned himself with? Well, there was a letter from Jones Day to Mr. Santon, who is Mr. Ball's attorney, asking that Mr. Ball provide that information. But in Mr. Ball's deposition, Mr. Ball states, I don't even remember getting that letter. I don't remember there being. The tax consequences ended up being non-consequential. Is that true? Well, that's the. Is that the import of what actually came about? That's the argument from Prime Answer, but that was never an issue in this case, in that it was never a question from Mr. Ball. That was what was holding up the consent, and that's what he said. That's what Prime Answer alleges. That's not what Mr. Ball testifies to. Mr. Ball's testimony is at page C-908. Both sides have a disagreement as to what the reasons for his non-consent are. Well, Mr. Ball has stated what his non-consent is. That doesn't create a question of fact. If Prime Answer disagrees with Mr. Ball's deposition testimony. Well, what about the fact that he had earlier, just even a month or two before, said I can't see any reason why I wouldn't be consenting? Mr. Ball states, I may have had a conversation saying, would you object to a transfer? I said, I don't have an objection. Did he also say after this that he would reconsider the consent? He stated that if the parties said that they would reconsider whether they wanted to proceed with the transaction, he would reconsider his consent. That's right. But Phoenix office had no obligation at that point to agree to Mr. Ball reconsidering. And that goes back to the language of the contract. Again, I realize I've said it over and over, but that is the sum most important piece of this case, is that Phoenix office had the absolute right under that contract, under language that these parties negotiated. I think that's how the trial court read it, too. She read the contract that no matter what Mr. Ball did or didn't do after December 15th, Phoenix could pull out. After Mr. Ball declined his consent, which was December 21st. I just want to clarify that. But other than that, yes, that's exactly right, Your Honor. At that point, it doesn't matter because either party has a right. But up until that point, do they have a certain exposure with respect to their behavior vis-à-vis Prime? Does Phoenix office, Your Honor? Yes. Do they have the obligation to bargain in good faith, for example, or to behave in good faith? There's nothing in the record. There is a good faith element suggested in this. And there's nothing in the record that would suggest that somehow Phoenix office didn't act in good faith. Everything that Phoenix office did was, first of all, because Prime Manser asked Jones Day to obtain a letter of consent. I'm sorry, to obtain an opinion of counsel from Mr. Ball because that was Prime Manser's obligation to provide it. Why should Phoenix office care one way or the other? Why should they actually withdraw from the contract and say we're going to terminate all negotiations right now? Why should they care? It doesn't matter, Judge. It doesn't matter because they have... But why should they care? Why would they do that? Why is it any skin off of their nose? They already bargained away the option at an earlier settlement agreement, right? They did. Doesn't this look like they're really trying to renege on the settlement agreement that's more than how many years old? Well, and that's another point, Your Honor. The settlement agreement was reached in May of 2005. The option was available after the settlement agreement was agreed to until November of 2005, same year. Okay. And Phoenix... And that was extended by contract. Well, the option was exercised, and then within the agreement was a closing date. Okay. At that point, there was ample opportunity for Prime Manser to move ahead on this deal anytime Prime Manser wanted, from when they had the ability after the settlement was reached. They're the ones who decided not to move ahead on it. They waited until December. They waited until the holidays. They were trying to get Mr. Ball's consent. They were using Jones Day as representing them. They were the ones who asked for this. You say they waited until the holidays. Are you suggesting that maybe they were trying to create some kind of artificial pressure built around the holidays? I have no idea. You're not claiming that lawyers would ever do something. Certainly not, Your Honor. And I have no idea what Prime Manser's objectives were in this case at all. If they had wanted to close the deal, they had the opportunity to do it. They could have done it earlier. And maybe it's wrong for me to even suggest that there were ulterior motives beyond the contract itself. Exactly, Your Honor. Exactly, Your Honor. And that's exactly my point. It's not to suggest that Prime Manser had an ulterior motive. It's to say it doesn't matter what either side's motive was. What matters is the language of the contract. And the contract makes clear exactly what each party had the right to do. And I think the trial judge agreed with you. That's correct, Your Honor. Okay. I think we've understood your position. Thank you very much. We're going to give your opponent an opportunity. He has the main order. We'll give him a few minutes to sum up. Thank you very much. Thank you. Your Honor, very quickly, the argument from my opponent is the contract is what the contract is. The problem is that the law is very clear. Illinois does not enforce times of the essence provisions that visit a forfeiture on a party unless there is actual prejudice and harm to the person asserting the times of the essence provision. That's Chariot Holdings and the other cases to that effect that we've cited in our brief. They cannot terminate on the 15th, the 16th, or any other date unless they can show that the drop-dead date, if it's not kept, will cause harm to them. Now, this is a fact issue. Is there harm and prejudice? The evidence is very clear. Mr. Patterson, the CEO of the defendant, testified that there was nothing magic about the December 15 date. Ms. Matejak, their attorney, testified that no harm would occur to the defendant if the closing took place on December 31st as opposed to the 15th of December. Without harm, the counsel is incorrect. They are not entitled to terminate that contract and impose that forfeiture as a matter of very clear Illinois law. One other point, Your Honor. Illinois law is also very clear. This is the NRA Edgewater and the Levy Holdings case that we've cited and a number of other cases as well. If you have a right to terminate, even if time truly is of the essence, on December 15, but you suspend that right by not terminating on December 15, and counsel was incorrect when she read the contract or stated what the contract says, it does not say that if December 15 comes and goes that you can terminate after that date. It says you may terminate on the 15th. They didn't. Where does it say you may terminate on the 15th? What are you? I think the language is relating on this. Paragraph 5.1 of the agreement, Your Honor. Yeah. Counsel indicated it said that you could terminate after the drop dead date. The word after is not in that provision. Oh, all right. It doesn't say that you have, you're saying because the word after isn't in there they can't terminate after? I'm saying they can't terminate after because of the Illinois law that says if you don't avail yourself of the opportunity to exercise the drop dead date and you suspend that right, that then you have to give the other side notice and reasonable time to perform before you visit another, impose another drop dead date. That, if I can read very briefly from the Inouye Edgewater case, when one party to a contract can show that the other party, it's Cantrell. I apologize. I've given you the wrong sites. It's the Cantrell and the GAM construction cases which hold this, Your Honor. We didn't talk much about your second issue, which is even if you lose, you want your money back. Do you want to say anything about that? Your Honor, I think given where we are, I'll stand on the briefs on that. Okay. I would say one thing. It's truly unconscionable for the defendant to actually interfere with our ability to procure the consent of Mr. Ball by instructing him not to deal with us. Well, that's a different issue. It's pretty clear from their letter that you should get your money back if you can show, if you can show that they interfered. Correct. Okay. But on the clear language of the contract, absence interference, they're entitled to keep the earnest money, aren't they, if you were unable to show anything else? That's correct. Okay. Counsel, thank you both. It was very well argued. Thank you, Your Honor. The case will be taken under advisement.